Good morning, Your Honor. Paul Hamp for Appellant Taxpayer Jose Reynoso. If I may please the Court, I'd like to reserve two minutes for rebuttal. Before I begin the discussion, I'd like to concentrate on a couple of issues that are undisputed by both sides. Issue number one being that the tax overpayment for 2007 exists. My client is entitled to that money on the merits. The government is attempting to withhold that money on a technical defense under 6511. So that's settled issue number one. He deserves it. It's not always the case with statute of limitations. I mean, there are lots of times when the government is clearly entitled to collect from a taxpayer, but it's too late. Well, I'm thinking from the perspective of the taxpayer, whether there's a substantive dispute on whether or not versus  there's no real dispute, but for the act of the government in crediting, I've forgotten the verb used, in 2009, you'd be out of luck. Your client would be out of luck. That may be true, Your Honor, but that's not the facts that we have here. Well, but why isn't it the facts you have here? Well, because that's the one. Let me talk about settled issue number two. There was a credit that was transferred from 1999 to 2000. Now, assessment And is it true that without that, you'd be out of luck? Frankly, Your Honor, I haven't thought about that. No, I can't believe that. You've given it no thought because the government is arguing it like crazy? It seems to me that your brief just assumes the fact that your recovery would be barred if the IRS had not actually credited the money. Your Honor, that was in the brief, but since that was merely a hypothetical, it doesn't apply to this case because the government actually did move the money, so Well, just a minute. Why didn't I see an argument then that if we go back to 2000, if they hadn't have done anything to transfer the credit, we would have won anyway? Well, as a trial attorney that was involved in this case, that was never an issue. The government never argued that they didn't transfer the money. The district court never argued that they didn't transfer the money. That was never an issue, so I never raised it because there was no need to raise it. But if I may talk about this transfer because I think all of these issues kind of hinge upon that transfer. Number one, the credit transfer occurred from 1999 to 2000. That's undisputed. It's admitted by the government. It was also as reflected on the Form 4340, which represents the official acts by the Secretary of the Internal Revenue Service. These are official acts. For example, as a taxpayer would submit or file his tax return. That is analogous to what the Secretary does as reflected on the 4340. That represents legal acts by the government. And that's what everyone goes, looks to, to see what actually occurred. Well, and if we're looking for facts that are absolutely clear, isn't it sure, isn't it absolutely clear that the 2007 return asked for a claim of credit? I'm sorry, Your Honor. Can you repeat that? Isn't it clear that the 2007 filed return asked for a claim of credit by the taxpayer? Didn't he ask for a claim of credit in the return he filed in 2007? What he asked for in 2008 in his date of December 12th. Now, just a minute. In 2000, when he filed his return for 2007 for that year, he asked for a claim of credit at that time. It relates to 2000, Your Honor, not 2007. Well, but, okay. It's my understanding that he filed a return in 2007, filed a return for 1999. At that point, August 6, 2007, he filed a return claiming a tax liability of $125,000 and an overpayment. At that point, he asked he made his claim of credit, as I understand. Well, in fact, in December, he filed an amended return and corrected the liability and an overpayment. That's correct, Your Honor. And he put right on the line saying the amount should be applied to 2000 estimated tax. In my book, that is the time when he asked for a claim of credit. Correct? The only reason I'm reluctant, because I'm not sure I understand what claim of credit means. You're going to put it. Well, we've got a claim of credit and we've got a claim of refund. He asked for a claim of refund, but here he's asking for a claim of credit because he wanted it transferred. Right. So what he asked for, and he titled that, I can refer to. And at that time, and my second question, at that time, the IRS had no authority to grant the credit. It was time-barred when he said in 2007 that he wanted it applied. Well, whether that was time-barred or not, I'm not going to speak to that, Your Honor. I mean, if the IRS wants to characterize it as a mistake or not, I mean, that's for the IRS to do. That's not for me to do in representing my client. Well, if it's without authority, if you agree that it's without authority, if you don't want to contest it. Well, I don't agree. I do. Then you'd better speak to it. I will speak to it, Your Honor. I apologize. If I could use some analogies, the statute of limitations is something that the government could use as a shield, or for some other analogies used in previous hearings, a door that could be closed. Now, if the government doesn't use the shield nor closes the door, if something happens, the government can't retroactively take it back. Now, there's nothing in the state – nothing in the – Did the client have any detrimental reliance? Detrimental reliance by whom, Your Honor? Did your client – does your client have any claim of detrimental reliance because of the government's act? I mean, we have a lot of estoppel cases. I mean, estoppel is not easy to get against the government, and to get it, you usually have to have, gee, I really relied upon what they did, and this is going to be horrible for me as a result. Your client have any basis for reliance upon what the government did? I'm not characterizing it as reliance, Your Honor. I'm characterizing it – Well, that's why I'm asking. Do you? And your answer is no. Then it seems to me you've got a problem because you don't get estoppel against the government very easily. So how is your client harmed somehow? How did your client rely upon this classification or the crediting by the government? Well, my client is harmed because if – He loses the case. He loses – But he was going to lose the case anyway if the government hadn't given him that credit. That's the central point that I'm trying to make clear is that we cannot ignore that this credit occurred, and it didn't occur – the government admits that the credit occurred much later, sometime in 2009. Therefore, the Secretary allowed that credit to occur in 2009. The government shouldn't be allowed to just ignore the fact. This is for – So you should be treated better than all the other taxpayers because some IRS agent made a mistake. No, Your Honor. In all the cases that the government has relied upon, they never actually affected the transfer. In all of these cases, the transfer was – So because they affected the transfer by mistake, your client should be better off than all the other taxpayers in the country because they didn't get the same mistake made on their account. Is that what you're telling us? Your Honor, I would submit that if the government did that with other taxpayers, the government would be liable for the refund, too. Mike, I'm not asking you – Okay, but that means all the people they didn't make a mistake with lose out. I mean, why is it your client should get the benefit of the mistake? It's not – I don't characterize the benefit of a mistake, Your Honor. I don't characterize it as a mistake. It's just something – But you're not disputing it. You say, I'm not going to talk about that. Okay, so if you're not going to talk about it, we accept the government's position. Let me speak to the – even assuming it is a mistake. You know, there's a monopoly card that says, collect $200, bank error in your favor. Only the law doesn't work like that. If the bank makes a mistake, you don't get to keep the money. Why shouldn't that apply here? Well, I look at the inverse, Your Honor. Taxpayers – I can't come – if I'm representing a client and I say, my client made a mistake. He forgot to file his tax return. He filed it late. He did X, Y, and Z late. There's no court – and from personal experience, there's no court in this country that would buy that argument. Similarly, the government – As to penalties, yes. As to owing the tax, obviously not. Right. And if the IRS doesn't come after your client on a timely basis, even though otherwise it's unquestionable that your client would owe the money, I suspect you're going to plead the statute of limitations as a defense, and you're going to win. I would. Even though your client should have paid the money. But if they don't come after you timely, then you've got a statute of limitations defense. So why shouldn't that work both ways? Because, again, I don't mean to be stubborn, but the credit happened. The secretary – according to the statute, when the credit is made, when the secretary allows a transfer, that is a day that you use for the look-back provision under 6511. That isn't what Treasury Reg 30164023A – and I'm not really big on this kind of stuff – says. It says, A properly executed individual income tax return or amended return shall constitute a claim for refund or credit within the meaning of section 6511. And, therefore, if I read what happened here, it seems to me that a claim for credit was made when you filed your return in August 6, 2007, or on December 5, 2000, when you filed your amended return. And at that point, if I use the look-back period, the IRS had no authority to allow you the credit. It was time barred at that time. Your Honor, taxpayers have the ability to make amended claims for refund. Now that the claim for credit on the tax return was done pro se, the courts have always recognized the need to look at the taxpayer's intent when it comes for the purposes of statute of limitations. Now, the taxpayer, through counsel me, submitted a formal claim for refund on April 23, 2009, which explicitly put the IRS on notice of what we're talking about right now. Well, it seemed to me like it was you who was thinking of a real good way to try to overcome what had happened. So you tried to put another provision in order, and all I'm trying to do is put the regulations in order and determine what happened. So you can respond to that. I'll try, Your Honor. Claims for refund, again, could be amended. Now, the claim for refund, the requirements for a claim for refund is if it sufficiently puts the IRS on notice of what the taxpayer is asking for. Now, the April 23, 2009 claim for refund sufficiently put the IRS on notice of what the taxpayer was asking for. But made that timely. It was timely, Your Honor. Well, but the money had been paid years before. 6511 is a little, you know, perhaps maybe if I could, in the limited time I have, talk about 6511A and 6511B. 6511A is not at issue here. So what we have to do is from the time of the claim for refund, which happened on April 23, 2009, section 6511B allows the taxpayer to go back three years, plus any claim for extensions, to see what taxes were paid during that time. And if they were paid during that time. And was this money paid during that time? Well, now for credits, now this is what. And the money was paid in 2000 and 2001, if I recall. But the statute recognizes a credit transfer as being paid when the money was actually allowed to be transferred. So we're right back to where we were before. Exactly. The whole case depends upon the government making the credit transfer at a time when the credit transfer shouldn't have been made. That's correct. That's correct, Your Honor. And, you know, let's just assume that the government did make a mistake. So if the government makes a mistake, what are the implications of this? Will the government just get a free pass because the government made a mistake? Taxpayers certainly don't get free passes. And another thing is before this Court and other circuits around the country, there's what's known as a rebate versus non-rebate refund. And the difference between a rebate and non-rebate, which is getting a little involved, is, is there a substantive issue with the claim for refund? Namely, is there substantive issues with the nature of the tax versus was it a clerical mistake? And the government has advanced argument that if it's a clerical mistake, that the government does not have to go through the procedure of making assessments before initiating collection efforts. And so what I'm submitting to the Court here is that even if this was a mistake, that doesn't excuse it. Why should the government be allowed a free pass? It doesn't excuse it because it was a clerical mistake? Yes, Your Honor. The distinction between rebate and non-rebate, I believe that non-rebate is a clerical mistake and a rebate refund is where the IRS later makes a redetermination on the merits that somehow the taxpayer should not have been given the refund on the merits. So the government in a sense is saying if the government makes a mistake, a clerical mistake, what have you, that they do not have to go through the procedure of making assessments and they can go directly to collection efforts. And courts formally, including the Ninth Circuit, have stated that no, government, you need to go through the same procedure whether or not you assert that it was some sort of clerical mistake or a mistake on the merits. And what I am positing is that even if this is construed as a mistake, frankly, that's something that the government needs to deal with. Taxpayers make mistakes all the time and they're not given free passes. Why should the government be given a free pass? Because established issue number two is that the secretary allowed the transfer within the time period under 6511B. That's undisputed. It was admitted by the government. It's in the 4340. That is a settled issue. So the only way around that is by saying to the government that somehow that could be excused. And I would submit to the court again that the government and taxpayers are held to the same standard. We all abide by the same laws. Whether or not the government made a mistake, they did not use this defense when they could have, namely before the transfer occurred. They did not do that. The transfer did occur. The secretary of the Internal Revenue Service did allow the transfer, again, within the time period allotted. Suppose your client received a tax refund that actually belonged to somebody else. Would he be allowed to keep the money? No, Your Honor. Well, whether he would. Is that any different? Well, the difference there is. The check has his name on it. I'm sorry, Your Honor? The check has his name on it. Right. Because there, Your Honor, it's not his refund on the substance of the case. But the government made a mistake in getting the money. No, no. The difference between that situation is that this money legitimately does not belong to this taxpayer. But here, there is no issue about the merits of the case. My client overpaid his taxes for the year 2000 in excess of $100,000. So that's the clear difference is that in your situation, Your Honor, that particular taxpayer did not deserve the money on the merits. But in this particular situation, taxpayer absolutely is entitled to the refund on the merits. The only issue here is whether or not the credit transfer was allowed within that three-year window before April 23, 2009, under Section 6511B. Now, that's undisputed that that occurred. And the only way to prevent my client from getting that money is if this Court excuses this official legal act by the government. And whether it's characterized as a mistake or not, I would submit to the Court that's not correct. Because we all, taxpayers and the government, have to abide by the same Internal Revenue Code. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Tamara Ashford on behalf of the United States. I think the best way to begin is to perhaps give you sort of an accurate and full factual picture. Because counsel erroneously focuses on, you know, keep saying that the date of the claim for refund is in 2009, as well as focusing incorrectly on the actual credit transfer. So the facts are this. So in April 19 — April 12, 1999, as well as April 15, 2000, Mr. Renoso made payments against his 1999 tax liability. Those were — the exact amounts were $25,000 on March 21, 1999, $220,000 in April 15, 2000, respectively. It wasn't until 2000, as well as 2008, that Mr. Renoso finally filed his Federal income tax returns for both 1999 and 2000. After having been charged in December of 2004 with various tax offenses and pleading guilty in May 2007 to three misdemeanor counts for failure to file income tax returns for 1999 — He paid too much. Pardon me? Turns out he paid too much. Is that true? Turns out he paid — correct. Turns out he did pay too much. If he had filed on a timely basis, he'd have money coming back to him. Yes, he would. And so your entire argument — I mean, you accept the undisputed fact, at least the first one offered up by the taxpayer, which is that there's no question that in terms of the tax obligation that should have fallen on him, he would be entitled to a refund if his — if his requests for the refund were timely. Yes. And, in fact, if his claim for refund had been filed in 2003, with respect to those payments that are made in 1999 and 2000, he would have been able to get those. His administrative claim for credit — with respect to 1999, his administrative claim for credit arose, as Judge Smith, you correctly pointed out, it arose with respect to his second return that was filed pursuant to 6402 and the regulations thereunder, in which he stated his tax liability was $127,473, with an overpayment of $117,527, which he requested on line 67. And I will actually point to the court — this is in the supplemental excerpts of record on page 4. If you look at line 67, he requested that that $117,000, quote, be applied to his 2000 estimated tax return. Now, I will just, as an aside, mention that this tax return was filed or was prepared by Mr. Reynosa's accountant. That is the administrative claim for credit or refund in which, at that point, under 6511b2a, the three-year look-back rule applies. And as the district court correctly determined, that the IRS really should not have had no authority to actually do that. But it did. But it did. And that's why we're here. All right. So taxpayer argues that, gee, if I make a mistake, the government dings me and argues that it should be reciprocal. Why shouldn't it be reciprocal? Or why is this mistake different? This mistake is different, Your Honor, for a couple of reasons. First of all, the whole policy and point behind 6511, the three-year look-back rule, and really both the timely filing requirement for the claim under 6511a, and then what's at issue here, which is 6511b, is that to prevent taxpayers from recovering stale claims. The same could be said, I think you may have alluded to it, you know, the IRS under 6401 has three years to assess taxes. So we have different kinds of mistakes. And, I mean, I offered up perhaps the extreme example. If the government sent to the wrong person a refund, and occasionally reading the newspaper, somebody's account gets credited with some huge amount of money because the number got transposed or something, no question but that you don't get to keep the money. The taxpayer or the citizen would have to return it. This is a different kind of mistake. In that situation, actually, the IRS would attempt to, if it falls within the applicable statute, to file an erroneous refund action. Actually, give it a try. Send me a million dollars. We'll see what happens. Give me your address. So why is it this mistake? Why is it the crediting by the IRS, which apparently is not disputed, took place at a certain date, and I've lost track of the date, sometime in 2009. Correct. Why should that not be treated as being the date that should be treated as the payment of the tax? That is not, Your Honor, for a couple of reasons. Specifically, if you look at 6402, and 6402, pardon me, let me, I can recite it for you. Take me through the tax code, my favorite. 6402B. I guess it's probably the easiest I have at my disposal. The regulations, which is on page 45 of our addendum to our brief, there are special rules applicable to income taxes. A is, which is, I'm now looking at dash 3A at the very bottom of page 45. In the case of a claim or credit for refund, filed after June 30, 1976, in general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment should be made on the appropriate tax return. There are numerous cases which we have cited in our brief. In particular, I would call your attention to this Court's 2002 decision, Omohundro v. United States, in which actually, Judge Reinhardt, you were on the panel in that case. It's a per curiam published decision, which specifically ---- Go in the wrong direction again. And we cite it at page 18. I think that's right. Hold on. Of our brief. Pardon me. Of 19, excuse me. Citing you for a tax case. That's pretty good. My specialty. Yes. In Omohundro, there, the Court found that that is a claim when you ---- it constitutes a simultaneous filing of the return, excuse me, along with a claim for credit or refund constitutes an administrative claim for refund. And from there, so you have that. From there, now you need to go to whether under 6511A and B, B is at issue here, whether both the time limits limitations are met, as well as the amount limitations. Again, the B is the three-year look-back rule. And in this case, the three-year look-back rule. And again, I will read it. It's in our brief. Page 45 again. Yes. It is. Yes. So I'm on page 44. So it's the limit. So there's, as I mentioned, there's a limit on amount of credit. Again, to ---- again, the policy is to prevent taxpayers from bringing or being able to recover, you know, claims that ---- stale claims that are much, much later than from when payments are made. A says, If a claim was filed by the taxpayer during the three-year period prescribed in subsection A, the amount of the credit or refund shall not exceed the portion of the tax paid within the period immediately preceding the filing of the claim. So as I understand taxpayer's argument here is that the tax was paid in 2009 when the IRS credited the overpayment from 99 to the tax year 2000. That is his contention. So what's wrong with that argument? Because it's legally incorrect. Why? But even if the credit were deemed paid when the IRS allowed it, let's say it were deemed paid in 2009, at the time the plaintiff credited or claimed the credit, which was in 2007, they were the payments made or deemed made are still outside the lookout period, aren't they? Your Honor, could you repeat that? Because the credit was claimed in 2007. The credit was claimed in 2007. And therefore is outside the time for the look-back period in 6511b2a. And so it doesn't seem to me that when the IRS paid it has any, even if they had have paid it, even if we go with the Petitioner, has any relevance to that. Because we're back again. It's the time when they claim the credit that's important, and it has to be within the three-year look-back period. Right. It doesn't matter when actually on the records of the IRS's records that the actual credit transfer was made, which was in this case 2008, 2009. I will actually point out that in pursuant to the criminal tax proceeding, he was required to post a significant bond as sort of prepayment or payment for his anticipated 1999, 2000, and 2001 tax liabilities. In December of 2005, the IRS applied the majority of that bond, about over 400,000, sprinkled over those to those liabilities. That amount, part of that he actually claimed on his refund suit here. We've conceded that. He has received his refund suit here was for over $617,000. He has received, and we concede that he is entitled to, I think the amount is close to $485,000. Thank you, Your Honor. So, I mean, you know, quite frankly, this, you know, he is talking about it's, you know, it's, you know, it's a mistake. We should, you know, be held to it. But, you know, the IRS's view quite clearly based on the law under 6511 coupled with 6513 and 6402 is that the taxpayer is, in fact, trying to capitalize on the IRS's mistake. As I had mentioned before, you know, the taxpayer really is in his situation, in this situation, you know, of his own making. I think certainly, you know, one of the consequences of Mr. Reynoso's, you know, extended and repeated conduct in not timely filing his returns, filing them, you know, is that he made, you know, payments, estimated payments for 1999. In 1999 and 2000, that, you know, he's barred from recovering the $117,000 of his refund suit. If the Court doesn't have any other questions. Since we've got an extra two minutes, let me just ask you one question. Sure. Judge Clifton's example of your mailing him a million-dollar check by mistake, is there any period in which you can't recover that? Is he safe at any point? There are time constraints with respect to the IRS seeking an erroneous refund. It is the same. As well as there are time constraints on the front end with respect to the IRS, you know, auditing your tax return and assessing a tax, three years. If you can keep that million dollars for a while, you won't be able to remedy your mistake? At some point, again, yes. Yes. Yes. Okay. Thank you. Thank you, Your Honors. With respect to our remaining contention and further details, we would just rest with respect to our arguments in the brief. Thank you. Thank you. Your Honor, I apologize. I maybe should have stated this before, but there's a provision in the IRS Code, it's Section 7422D, again, 7422D. And so I think it's settled that what's at issue here is the April 23, 2009, claim for refund. Was there a tax payment made three years before that? And Section 7422D states, and it's entitled Credit Treated as Payment, the credit of overpayment of any tax in satisfaction of any tax liability shall for the purpose of any suit for refund of such tax liability so satisfied be deemed to have been a payment in respect of such liability at the time the credit is allowed. But you would agree with me, wouldn't you, that 7422D is not the same as 6513, that by their very terms they create a deemed time of payment for overpayments under different circumstances? Section 6513, Your Honor, is about estimated taxes. I understand. And the only provision that is remotely applicable is 6513D, and all it talks about is transfers of overpayments. So what has happened here is that my client made payments in 1999, and later on he requested that the overpayment from 1999 be transferred to 2000. And the Secretary of the IRS allowed that transfer to occur in 2009. And he made the claim for refund on April 23, 2009, which obviously falls well within the three-year rule. That is undisputed. That is what occurred. Now, 7422 says that the credit is deemed paid when it is allowed. And, again, it was allowed in 2009. And just to kind of talk to you. You've gone over. But I really think that I think you need to think about 6513 and 7422, because to me their terms are different. And what they're really doing is they're trying to set a textual reading allowing things to happen under each section to exist without conflict. And what you're trying to do is bring 7422 into the middle of this section, which I do not think applies. And that's why I ask you the question. Yes, Your Honor. Let me try to explain section 6513. Within about 30 seconds. It has to do with estimated taxes, Your Honor. And estimated taxes only apply if you make payments or ask for transfers before the tax return is filed. Now, by the time my client asked for the transfer, the tax return for 2000 was already filed. So it could not be an estimated tax. Now, so section 6513 does not apply because, once again, it's not an estimated tax. And if it was an estimated tax, Your Honor, the IRS should have delineated that the credit was applied April 15th of 2001, which it did not do. It said that it was April 15th of 2000. So by the IRS's own actions, it contradicts the argument that it's an estimated tax. It's not an estimated tax because, once again, he made the request after he filed the tax return, so there was nothing estimated about his taxes owed for 2000. He merely, his intent was to transfer the money from 1999 to 2000 to maximize his tax refund for which he was rightfully owed on the merits. Now, the secretary, again, I keep on going back to this, the secretary allowed that transfer to occur in 2009 within the three-year time frame. Therefore, there is no statute of limitations at issue, and therefore, my client is entitled to the refund. And also, there's nothing in the code that says that the IRS can't do this. 6402 says that the secretary may do something within 30 seconds.     All right. Thank you. And I'm sorry. My question went way over, and I'm sorry I asked the question because you were always already way over. I just wanted my question answered, and I think you've done that. Thank you. Thank you. It will be submitted.
judges: Reinhardt, Clifton, Smith